**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William Joseph KENNEDY, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 2004.

Filed Feb. 8, 2005.

Candace Cain, Helen R. Santoro, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Amy E. Constantine, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: ORIE MELVIN, BENDER and POPOVICH, JJ.

OPINION BY BENDER, J.:

¶ 1 William Joseph Kennedy appeals from the December 11, 2003 judgment of sentence imposed following his conviction on two counts of driving under the influence (DUI) and various summary violations. For the following reasons, we remand for resentencing.

¶ 2 A brief factual and procedural history follows. On September 25, 2003, Appellant pled guilty to charges contained in two separate criminal complaints. With regard to charges under the first complaint (CC 200301435), the Commonwealth asserted that at approximately 12:57 a.m., on October 8, 2002, police observed Appellant driving his motor vehicle without his headlights on. N.T. Guilty Plea Hearing, 9/25/03, at 9. Police stopped Appellant's vehicle. *Id.* at 10. Appellant admitted that he had been drinking. *Id.* The officers noticed the odor of alcohol on Appellant. *Id.* Appellant failed field sobriety tests at that time. *Id.* The officers arrested Appellant for DUI. *Id.* Police then discovered that Appellant had been operating his vehicle with a license that had been suspended due to prior DUIs. *Id.* The officers also found an open beer bottle in the vehicle. *Id.* Appellant refused to submit to either a blood or breath test for the presence of alcohol. *Id.* The charges relating to this incident included the DUI, and the summary violations of driving while operating privilege is suspended (DUI related), restriction on alcoholic beverages, and period for requiring lighted lamps.

¶ 3 Less than 23 hours later on the same day, *i.e.*, October 8, 2002, police again effectuated a stop of Appellant's vehicle after observing him run a stop sign. *Id.* at 10–11. The officer conducting the stop noticed that Appellant had slurred speech and glassy eyes. *Id.* at 11. Again, Appellant failed field sobriety tests and was placed under arrest for DUI. The charges related to this latter incident were filed at CC 200215693 and, in addition to the DUI, included a charge of driving while operating privilege is suspended (DUI related), and a charge pertaining to running a stop

sign. The cases were consolidated and Appellant pled guilty to charges based on the above facts as recited by the Commonwealth at the guilty plea hearing. The trial court ordered the preparation of a presentence report and scheduled sentencing for December 11, 2003. Notably, Appellant was on probation for a previous DUI when these offenses occurred.

¶ 4 With regard to the charges at CC 200215693, the trial court imposed a sentence of 2½ to 5¼ years' imprisonment and stated that this sentence "encompassed the sentence for both the [DUI] and driving while [Appellant's] operator's privileges have been suspended for an alcohol-related offense." N.T. Sentencing, 12/11/03, at 7. With regard to the charges at CC 200301435, the court sentenced Appellant to 2½ to 5¼ years' imprisonment. The court ordered the sentences to run consecutively. The court also imposed various fines, ordered Appellant to complete safe-driving school, and ordered him to complete an alcohol evaluation by the probation office.

¶ 5 Appellant filed a Motion to Modify Sentence on December 15, 2003. The court denied this motion on December 30, 2003. On January 27, 2004, with new counsel, Appellant filed a notice of appeal from his judgment of sentence. The court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). As described further below, along with filing his concise statement on March 16, 2004, Appellant filed a "Motion for Evidentiary Hearing in the Trial Court to Support Issues on Direct Appeal" (hereinafter, "Motion for Evidentiary Hearing"). The

trial court denied this motion and soon thereafter issued its opinion pursuant to Pa.R.A.P. 1925(a).

¶ 6 In this appeal, Appellant contends that: (1) trial counsel provided ineffective assistance of counsel (IAC) by advising him to enter an open guilty plea and that the trial court should have granted an evidentiary hearing on this issue; (2) his sentence is illegal because it exceeds the statutory maximum and he did not get credit for time served; and (3) his sentence was excessive and the court considered improper factors when imposing the aggravated sentence. We consider these claims in the order presented.

¶ 7 First, Appellant argues that his trial counsel provided IAC for incorrectly advising him that he could avoid receiving consecutive sentences if he pled guilty to the charges in each case. Appellant's brief at 17, 18. Appellant raised this IAC issue for the first time in his Rule 1925(b) concise statement of matters complained of on appeal.[1] Simultaneously with the filing of his Rule 1925(b) statement, Appellant filed his Motion for Evidentiary Hearing in which he reiterated his IAC claim and, in support thereof, attached a copy of a letter that he had received from his trial counsel informing him, in pertinent part, as follows: "Your sentence will be 2½ years to 5 years for the two DUI's [sic] . . . . . Please understand that if you would have went to trial on both cases and lost, your sentence would have been 2½ to 5 years consecutive." Letter from trial counsel to Appellant, 10/3/03. Appellant argued, in his Motion for Evidentiary Hearing, that because of his trial counsel's incorrect advice, evidenced by the above-noted letter, he was

---

1. Appellant stated that his IAC claim was raised in "both . . . a post-sentence motion and in his 1925(b) statement." Appellant's brief at 23. More accurately stated, Appellant's Motion to Modify Sentence, filed on December 15, 2003, *does not* present any IAC claims. Rather, Appellant's IAC claim arises for the first time in his Rule 1925(b) statement and in his Motion for Evidentiary Hearing, both filed on March 16, 2004.

led to believe that by pleading guilty he would avoid the possibility of consecutive sentences that would aggregate to a maximum of 10 years on the two DUI charges. Motion for Evidentiary Hearing at ¶ 9.

¶ 8 Thus, in his Motion for Evidentiary Hearing, Appellant asked the trial court to conduct a hearing to "flesh out the issues of ineffectiveness" or else those issues "will not be able to be presented on direct appeal." Motion for Evidentiary Hearing at ¶ 14. Appellant asserted that the court had jurisdiction to hold this evidentiary hearing under Pa.R.A.P. 1701(b)(4). *Id.* at ¶ 17.

¶ 9 Rule 1701 governs the effect the taking of an appeal has on the authority of the trial court to act. Specifically, Rule 1701(b)(4) provides that "[a]fter an appeal is taken ... the trial court ... may ... [a]uthorize the taking of depositions or the preservation of testimony where required in the interest of justice." Pa.R.A.P. 1701(b)(4). Appellant concluded his Motion for Evidentiary Hearing by arguing that it "is in the interest of justice to allow defendant to preserve testimony at this time in order to preserve issues of trial counsel's ineffectiveness for direct appeal." Motion for Evidentiary Hearing at ¶ 18.

¶ 10 As we noted above, the trial court denied the Motion for Evidentiary Hearing on March 17, 2004. Subsequently, on March 23, 2004, the trial court filed its Rule 1925(a) opinion in which it did not address the merits of Appellant's IAC issue but, rather, concluded that Appellant's IAC claim would not be reviewable on direct appeal pursuant *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002), a case in which our Supreme Court announced that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."

¶ 11 The general rule in *Grant* is premised on the idea that the trial record that is established by the time of direct appeal is usually insufficient for an appellate court to properly review IAC claims presented at that time without essentially, and inappropriately, making findings of fact with regard to trial counsel's actions. In other words:

The [*Grant*] Court recognized that "oftentimes, demonstrating trial counsel's ineffectiveness will involve facts that are not available on the record." [*Grant,*] 813 A.2d at 737.

Waiting to raise claims on collateral review affords the opportunity to develop a factual basis for the claim that counsel's performance did not meet the standard for effective assistance of trial counsel. Many of these claims are based on omissions, which, by their very nature, do not appear on the record and thus, require further fact-finding, extra-record investigation and where necessary, an evidentiary hearing.

Related to this rationale is the general belief that an appellate court should not consider issues that were not raised and developed in the court below. Courts have recognized that this general rule and its accompanying rationale apply equally to ineffectiveness claims.

*Commonwealth v. Dent*, 837 A.2d 571, 587 (Pa.Super.2003) (quoting *Grant*, ... 813 A.2d at 736).

*Commonwealth v. Blick*, 840 A.2d 1025, 1026–27 (Pa.Super.2004). In *Blick*, we summarized case law subsequent to *Grant* that clarified or defined exceptions to the general rule in *Grant*:

The Supreme Court noted that an exception to the general rule may be created when there has been a complete or constructive denial of counsel or that

counsel has breached his or her duty of loyalty. *Grant,* ... 813 A.2d at 738 n. 14. In addition, the appellate courts have carved out limited exceptions to the general rule set forth in *Grant.* For example, we will address ineffective assistance of trial counsel claims on direct appeal where the appellant would not be entitled to collateral relief due to the short duration of his sentence, *Commonwealth v. Salisbury,* 823 A.2d 914 (Pa.Super.2003), and where the ineffectiveness claim was raised in a timely post-sentence motion, developed at a hearing, and ruled upon by the trial court, *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003); *Commonwealth v. Hudson,* 820 A.2d 720 (Pa.Super.2003). Moreover, this Court has recently addressed an ineffective assistance of trial counsel claim on direct appeal where the evidentiary record was complete and there was a trial court opinion addressing the claim. *Commonwealth v. Causey,* 833 A.2d 165 (Pa.Super.2003) (holding that *Grant* did not require dismissal of claim that counsel was ineffective in failing to challenge sufficiency of the evidence where the record was complete and trial court drafted opinion addressing the claim). We have also found an exception to *Grant's* general rule where the ineffectiveness claim was raised in a Pa. R.A.P. 1925(b) statement, and the trial court filed a Pa.R.A.P. 1925(a) opinion addressing the merits of the claim and specifically indicating that the existing record was sufficiently developed for resolution of the claim. *Commonwealth v. Watson,* 835 A.2d 786 (Pa.Super.2003).

*Blick,* 840 A.2d at 1027. *See also, e.g., Commonwealth v. Henke,* 851 A.2d 185, 187–88 (Pa.Super.2004) (addressing IAC claims on direct appeal since all IAC claims involved trial counsel's failure to raise constitutional challenges to Megan's Law where same challenges had been deemed baseless in other cases). None of the exceptions described above apply in the instant case. Appellant does not allege a complete or constructive denial of counsel or breach of counsel's duty of loyalty; and, he does not allege that the duration of his sentence is so short that he would not have time to avail himself of collateral relief. Moreover, the record on the IAC issue is not sufficiently developed for appellate review, and the trial court did not address the merits of his IAC claim in its Rule 1925(a) opinion. Thus, it appears that none of the exceptions to the general rule in *Grant* apply to the instant case.

¶ 12 Although Appellant recognizes the general rule enunciated in *Grant,* he argues, nonetheless, that the trial court abused its discretion by denying his Motion for an Evidentiary Hearing because "there is a clear issue of trial counsel's ineffectiveness and the trial court had the opportunity and authority under Pa.R.A.P. 1701(b)(4) to hold an evidentiary hearing before review by this Court...." Appellant's brief at 23. He asks that we remand his case to the trial court "with instructions to conduct an evidentiary hearing so that Appellant's claim of [IAC] may be reviewed on direct appeal." *Id.*

¶ 13 Appellant cites no case, and we have found none, where an appellant, alleging an IAC claim of arguable merit, has invoked Pa.R.A.P. 1701(b)(4) after filing his direct appeal, in order to petition the trial court for completion of the record via an evidentiary hearing so that his IAC claim can be fully reviewed on direct appeal. Rule 1701(a) provides the well-established rule that, generally, "after an appeal is taken ... the trial court ... may no longer proceed further in the matter." Pa. R.A.P. 1701(a). Subsection (b) of this rule outlines certain exceptions whereby the

trial court has authority to act after the taking of an appeal. Appellant asserts that subsection (b)(4) (providing that the trial court may authorize the preservation of testimony after an appeal is taken "where required in the interest of justice") authorized the trial court, in the instant case, to hold an evidentiary hearing after Appellant filed his notice of appeal, so that a record can be developed to address his IAC claim on direct appeal. We disagree.

¶ 14 The only criminal case in Pennsylvania that provides any discussion about subsection (b)(4) is *Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089 (1999). Although Appellant relies upon *Johnson,* it does not support his position that the trial court had the authority to hold an evidentiary hearing in Appellant's case. *Johnson* was a death penalty case on direct appeal to our Supreme Court. *See Johnson,* 727 A.2d at 1092. The appellant in *Johnson* argued, *inter alia,* that the Commonwealth violated the *Brady* rule (*see Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)) for failing to produce all evidence tending to exculpate the appellant, including a letter written by one of the Commonwealth's witnesses that could have provided the defense with impeachment material against that witness at trial. *Id.* at 1093–94. The trial court held a post-trial evidentiary hearing pursuant to the appellant's motion for an evidentiary hearing to explore the *Brady* issue. *Id.* at 1094. The Commonwealth objected to the hearing because it was conducted after the appellant had filed his notice of appeal. *Id.* at 1094 n. 2. The trial court, at the hearing, noted the Commonwealth's objection to their jurisdiction, since the court was acting after the appellant filed his notice of appeal; however, the trial court responded by indicating that it would be in the interest of "judicial economy" to create an evidentiary record that would facilitate the Supreme Court's

review of the *Brady* issue. *Id.* In the footnote our Appellant relies upon, the Supreme Court said:

We applaud the trial court's decision to proceed with an evidentiary hearing to create a record for our review of Appellant's *Brady* claims. In direct review of capital cases, we relax the rules regarding waiver of issues on appeal and examine issues despite counsel's failure to preserve them properly. The trial court's decision to create an evidentiary record notwithstanding the filing of the Notice of Appeal unquestionably aids our review of this issue, and accords with the trial court's limited authority following appeal. *See* Pa.R.A.P. 1701(b)(4) (following appeal, trial court may "[a]uthorize the taking of depositions or the preservation of testimony where required in the interests of justice.").

*Id.* The Supreme Court specifically noted that there was a delay from the time the appellant filed his notice of appeal until the time the record was received in the Supreme Court and, thus, the record remained in the trial court at the time the evidentiary hearing was held. *Id.*

¶ 15 Appellant seizes upon the above-quoted language in *Johnson.* However, this language constitutes dicta contained in a footnote in a pre-*Grant* capital case on direct appeal to our Supreme Court that involved a *Brady* issue, not an IAC issue. The circumstances, issues, and procedural posture of the *Johnson* case are strikingly different from those in the instant case. We are simply not persuaded, based on the dicta Appellant relies upon in *Johnson,* that Rule 1701(b)(4), a rule described in *Johnson* as one of limited application, can now be used to circumvent the general rule enunciated by our Supreme Court in *Grant.* Appellant's reliance on the *Johnson* footnote is unavailing.

¶ 16 Appellant also cites *Commonwealth v. Crosby*, 844 A.2d 1271, 1272 (Pa.Super.2004) in support of his argument that this Court should order the trial court to hold an evidentiary hearing to create a complete record so that we could review his IAC claim in this direct appeal. The *Crosby* case presented a situation in which an appellant convicted of attempted murder and related charges filed a post-sentence motion raising IAC claims. *Crosby*, 844 A.2d at 1271. This motion was denied by operation of law and a direct appeal followed. *Id.* Under those circumstances, we concluded as follows:

> Presently, Appellant's ineffectiveness claims were first raised in his post-sentence motions. However, the trial court did not hold a hearing and the motions were denied by operation of law. Thus, we do not have a record from which we can review Appellant's claims. We recognize that the Comment to Pa. R.Crim.P. 720 requires an evidentiary hearing where new counsel raises claims of trial counsel's ineffectiveness in a post-sentence motion. However, the precedent for this requirement is *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), which was specifically overruled by *Grant*, 813 A.2d at 737. Although we think the better practice is for the trial court to conduct an evidentiary hearing where ineffectiveness claims are raised in post-sentence motions, we cannot conclude that such a hearing is required in view of the Supreme Court's explicit overruling of *Hubbard* by *Grant*.
>
> In its post-*Grant* cases, the Supreme Court has made clear its "strong preference ... to postpone review of all ineffectiveness claims to the collateral process ...." *Commonwealth v. Mitchell*, 576 Pa. 258, 839 A.2d 202 (2003). *See also Commonwealth v. Overby*, 575 Pa. 227, 836 A.2d 20 (2003) (ineffectiveness raised in 1925(b) statement; although case remanded for opinion, no evidentiary hearing held so *Grant* not *Bomar* applies); *Commonwealth v. Belak*, 573 Pa. 414, 825 A.2d 1252 (2003) (*Bomar* does not apply where ineffectiveness claims first raised in 1925(b) statement and trial court refused to consider claims based on lack of an evidentiary record). We conclude therefore that when ineffectiveness claims are raised in a post-sentence motion, the trial court fails to hold an evidentiary hearing, and the motion is denied by operation of law, *Grant* requires that the ineffectiveness claims be deferred to a collateral proceeding.

*Crosby*, 844 A.2d at 1272.

¶ 17 Appellant suggests that since his Motion to Modify Sentence was denied by court order rather than by operation of law as in *Crosby*, we should remand for an evidentiary hearing on his IAC issue rather than declining to review the issue on direct appeal and allowing him to raise his IAC issue in a collateral proceeding as we had done in *Crosby*. Appellant's argument is flawed. Most notably, unlike the appellant in *Crosby*, our Appellant *did not* raise his IAC claim in his Motion to Modify Sentence, *i.e.*, the post-sentence motion he filed prior to his notice of appeal. Rather, as noted above, Appellant raised his IAC claim *for the first time* in his Rule 1925(b) statement (and the accompanying Motion for Evidentiary Hearing). Thus, Appellant's situation is actually more akin to *Overby* and *Belak*, cited in the above excerpt from *Crosby*, where the IAC issues were raised for the first time in the appellants' Rule 1925(b) statements. In *Belak*, for example, the Court explained that the appellant "failed to raise any claims of trial counsel's ineffectiveness until he filed his statement of matters complained of on appeal pursuant to Rule 1925(b) ..... Conse-

quently, in its Rule 1925(a) opinion, ... the trial court refused to consider Belak's ineffectiveness claims because "no evidentiary record exist[ed] to address these claims." *Belak*, 825 A.2d at 1255 (citation omitted). Accordingly, the *Belak* Court concluded: "Given that there is no evidentiary record developing Belak's ineffectiveness claims, and given that the trial court opinion does not address those claims, *Bomar* is inapplicable here." *Id.* The only relevant difference between the circumstances in *Belak* and those in the instant case is that Belak did not file, in conjunction with his Rule 1925(b) statement, a motion for an evidentiary hearing under Rule 1701(b)(4).

¶ 18 Nevertheless, Appellant has failed to persuade us that his circumstances differ from those in *Belak* and similar cases such that Rule 1701(b)(4), a rule of limited application providing for preservation of testimony "where required in the interest of justice," would apply to circumvent the general rule enunciated in *Grant* which has been the law in this Commonwealth for over two years now. Accordingly, the trial court did not err by refusing Appellant's motion for an evidentiary hearing and applying *Grant* to dismiss his IAC claim. Thus, in accordance with *Grant*, we dismiss Appellant's IAC claim in this direct appeal without prejudice to his right to raise his IAC claim in a post conviction collateral proceeding. *See Grant*, 813 A.2d at 739 (applying its newly announced rule to dismiss IAC claims presented on direct appeal without prejudice, and stating that the appellant "can raise these claims in addition to other claims of ineffectiveness in a first PCRA [*i.e.*, Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46] petition and at that time the PCRA court will be in

a position to ensure that Appellant receives an evidentiary hearing on his claims, if necessary").

■ ¶ 19 In his second issue, Appellant argues that (1) the sentences imposed for the two DUIs exceed the statutory maximum and are, therefore, illegal; and (2) he did not receive proper credit for time served. The Commonwealth agrees that Appellant's challenges to his sentence require remand to the trial court for resentencing. We also agree.

¶ 20 First, we note that "[t]he defendant ... may appeal as of right the legality of the sentence." 42 Pa.C.S. § 9781(a). The issue of whether a sentence is illegal is a question of law; therefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary. *Commonwealth v. Collins*, 564 Pa. 144, 764 A.2d 1056, 1057 (2001).

¶ 21 The DUIs committed in this case occurred on October 8, 2002. At that time, the DUI statute was codified at 75 Pa.C.S. § 3731.[2] Both DUIs were graded as first degree misdemeanors. *See id.* at § 3731(e)(1) (now repealed, but at relevant time in this case, this section indicated that where conviction is person's third or subsequent DUI conviction, then it is graded as a first degree misdemeanor). A first degree misdemeanor carries a statutory maximum penalty of five years' imprisonment. 18 Pa.C.S. § 106(b)(6).

¶ 22 The charges at CC 200215693, the second complaint, consisted of (1) DUI (75 Pa.C.S. § 3731(a)(1)); (2) driving while operating privilege is suspended or revoked (75 Pa.C.S. § 1543(b)); and (3) stop signs and yield signs (75 Pa.C.S. § 3323). At

---

**2.** Effective February 4, 2004, that section was repealed and replaced with 75 Pa.C.S. § 3802.

the sentencing hearing on December 11, 2003, the court stated, in pertinent part:

[A]t Criminal Complaint 200215693, I'm going to sentence you to a period of incarceration of not less than two-and-a-half nor more than five-and-a-quarter years. That encompasses the sentence for both the driving under the influence and driving while your operator's privileges have been suspended for an alcohol-related offense.

Sentencing Hearing, 12/11/03, at 7. However, the written sentencing order form pertaining to these offenses, dated December 11, 2003, indicates that, on the DUI conviction, the court imposed a sentence of 2½ to 5¼ years' imprisonment. The form further indicates that the court imposed penalties "as to other counts" as follows: $1,000 fine for violation of section 1543(b), and no further penalty imposed for the stop sign violation. Thus, according to what is written in the sentencing order, no period of incarceration was imposed for violation of section 1543(b). The sentence imposed for the DUI, as indicated on the face of the form, is a maximum of 5¼ years, which is illegal as it exceeds the statutory 5 year maximum.

¶ 23 Similarly, the charges at CC 200301435, the first complaint, consisted of (1) DUI (75 Pa.C.S. § 3731(a)(1)); (2) driving while operating privilege is suspended or revoked (75 Pa.C.S. § 1543(b)); (3) restriction on alcoholic beverages (75 Pa.C.S. § 7513); and period for requiring lighted lamps (75 Pa.C.S. § 4302). At the sentencing hearing the court stated:

At Criminal Complaint 200301435, I'm going to sentence you to a period of incarceration of not less than two-and-a-half nor more than five-and-a-quarter years, which will run consecutive to the

sentence imposed upon you at the preceding Complaint.

Sentencing Hearing at 8. The sentencing order form for CC 200301435 indicates that a sentence of 2½ to 5¼ years' imprisonment was imposed for the DUI conviction, to run consecutively to the term of imprisonment imposed in the other case. With regard to the other charges, the court imposed a fine of $1,000 for violation of § 1543(b) and no further penalties with regard to the summary offenses pertaining to restriction on alcoholic beverages and period for requiring lighted lamps. Again, the sentencing order appears to have imposed an illegal sentence on the DUI conviction, as it exceeds the statutory 5 year maximum permitted.

¶ 24 In its Rule 1925(a) opinion, the trial court acknowledges that the maximum penalty for each DUI conviction is 5 years. However, the court explains that, in each case, the maximum sentence of 5¼ years was meant to encompass both the statutory 5 year maximum for the DUI and a *consecutive* 90 day sentence of imprisonment on the conviction for driving while operating privilege is suspended. *See* Trial Court Opinion (T.C.O.), 3/24/04, at 4–5. *See also* 75 Pa.C.S. § 1543.[3] Despite the court's intentions as explained in its opinion, we must remand for re-sentencing because the law indicates that:

The only sentence known to the law is the sentence or judgment entered upon the records of the court. [A] sentence ... is to be construed so as to give effect to the intention of the sentencing judge. To determine this intention the reviewing court limits itself to the language of the written judgment, despite

---

**3.** At the time of the offense in this case, section 1543 mandated the court to impose a sentence of not less than 90-days' imprisonment for violation of driving while operating privilege is suspended, DUI related.

oral statements of the sentencing judge not incorporated into it.

*Commonwealth v. Johnson*, 860 A.2d 146, 152 (Pa.Super.2004) (citations and quotation marks omitted). Additionally, "[w]hatever sentence is imposed can only be imposed upon a named, specific crime. Where there is more than one, each should be named of record and for each a specific sentence should be imposed according to the penalty prescribed for that offense." *Commonwealth v. Hitchcock*, 523 Pa. 248, 565 A.2d 1159, 1162 (1989). *See also Commonwealth ex rel. Scoleri v. Burke*, 171 Pa.Super. 285, 90 A.2d 847, 849 (1952) (citation omitted) ("Regardless of the evident intention of a lumping sentence, the penalties of a number of counts cannot have a cumulative effect. The only method recognized in law for the accomplishment of that result, requires separate orders on separate counts with the express direction, in apt language, that the sentences shall take effect consecutively."). Upon resentencing, if the court intends to impose, consecutive to each DUI count, a 90 day sentence for driving while operating privilege is suspended, the court should indicate this clearly on its written sentencing order.[4]

¶ 25 Additionally, Appellant argues that his sentence is illegal because he did not receive proper credit for time served. This issue is potentially meritorious, except that, as we shall explain, the record before us is not sufficiently developed for us to properly address this issue. Thus, we have additional reason to remand for resentencing.

¶ 26 Appellant states that at the time he was arrested on the charges in this case, *i.e.*, October 8, 2002, he was on probation for a prior DUI offense, docketed at CC 199917059. Appellant's brief at 28. Appellant claims that he was incarcerated in the Allegheny County Jail from October 9, 2002, to December 10, 2003, on a detainer issued by the Honorable Robert E. Colville in the case at CC 199917059. *Id.* We note that, in support of these assertions, Appellant attaches to his brief a copy of the jail's records, which are not part of the certified record.

¶ 27 The certified record does reveal that on December 11, 2003, Appellant was sentenced in the instant case and granted credit as follows: (1) on CC 200215693, credit granted for the period of time between October 9, 2002, and October 21, 2002; (2) on CC 200301435, credit granted for the single day of December 11, 2002. *See* Sentencing Orders, 12/11/03. Appellant claims that on the same date as sentencing, December 11, 2003, Judge Colville closed interest in the case at CC 199917059. Appellant argues that, at sentencing, the trial court should have, but did not, grant credit toward the sentence in the instant case for time served while incarcerated on the probation detainer, which amounts to a period of approximately 14 months. In support of his argument, Appellant relies upon 42 Pa.C.S. § 9760(1) and (4) (governing credit for time served) and *Commonwealth v. Smith*, 853 A.2d 1020, 1022 n. 4 (Pa.Super.2004) (granting credit under analogous circumstances).

¶ 28 The Commonwealth responds to this issue by indicating that it is "unable

---

4. This Court was recently presented with similar circumstances in *Commonwealth v. Messmer*, 2004 PA Super 451, 863 A.2d 567 (filed Dec. 1, 2004). In that case, the written sentencing order indicated that the sentencing court imposed a 5¼ year maximum sentence on a DUI conviction. As in the instant case, the 1/4 year was intended to apply to a conviction of driving while license is suspended, DUI related. In *Messmer*, as in the instant case, we found it necessary to remand for resentencing where the written sentencing order did not reflect the intent of the court as was stated orally at the sentencing hearing.

to provide any further meaningful answer to this claim, given the state of the record." Commonwealth's brief at 14. Indeed, as we have mentioned, Appellant relies upon, and is asking us to consider, documents that he has attached to his brief, which are not part of the certified record. As the Commonwealth duly recognizes, this Court may not consider anything that is not part of the certified record: "Any document which is not part of the official certified record is considered to be non-existent, which deficiency may not be remedied by inclusion in the reproduced record[,]" and "[w]here a review of an appellant's claim may not be made because of such a defect in the record, we may find the issue waived." *Eichman v. McKeon,* 824 A.2d 305, 316 (Pa.Super.2003) (citing Pa.R.A.P. 1921).

¶ 29 Similarly, it is apparent that, due to the state of the record at the time the trial court composed its Rule 1925(a) opinion, it too was not sure if Appellant should get the credit. *See* T.C.O. at 9 ("If, in fact, [Appellant] is entitled to the credit for the time that he was detained by Judge Colville, that credit should be given to him."). Accordingly, because the state of the certified record at this time does not permit us to fully and properly address Appellant's claim for credit, we direct the trial court to address this issue at resentencing, whereby Appellant will have an opportunity to present pertinent documents and other evidence into the record. *Cf. Smith,* 853 A.2d at 1022 n. 4 (concluding that certified record was sufficient to address credit issue where it included a presentence report containing pertinent facts).

 ¶ 30 Finally, Appellant challenges the discretionary aspects of his sentence. Although we are remanding for resentencing on the basis that the sentence imposed was illegal, we have, under similar circumstances and in the interest of judicial econ-

omy, chosen to address an appellant's challenges to the discretionary aspects of his sentence in a situation in which it was likely that the trial court, upon remand, would again impose the maximum sentence. *See Messmer,* 2004 PA Super 451, 8, 863 A.2d 567. However, the instant case differs from *Messmer* in that Appellant has not properly preserved the issues challenging the discretionary aspects of his sentence.

 ¶ 31 Initially we note that "[t]he entry of a guilty plea constitutes a waiver of all defenses and defects except claims of lack of jurisdiction, invalid guilty plea, and illegal sentence." *Id.* at 6. However, "Appellant's guilty plea does not bar his discretionary challenge because there was no agreement as to the sentence Appellant would receive." *Id.* at 8. Nevertheless, four requirements must be met before we will review issues pertaining to the discretionary aspects of a sentence:

> 1) the issue must be specifically preserved in a timely motion to modify sentence; 2) a timely notice of appeal must be filed; 3) the issue must be set forth in the issues to be raised on appeal in the statement of questions presented; and 4) the issue must be included within a concise statement of reasons for allowance of appeal which demonstrates a substantial question that the sentence imposed was not appropriate under the Sentencing Code.

*Commonwealth v. Pappas,* 845 A.2d 829, 841–42 (Pa.Super.2004). Appellant's challenges were not specifically preserved in his Motion to Modify Sentence. Accordingly, we decline to address the merits of his challenges to the discretionary aspects of his sentence. Certainly, Appellant will have the opportunity to challenge any such issues, if they remain, upon and/or after resentencing.

¶ 32 For the foregoing reasons, we remand this case to the trial court for resentencing.

¶ 33 Case remanded for resentencing. Jurisdiction relinquished.