J-S70016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT FENNELL, | |
| Appellant | No. 1119 EDA 2016 |

Appeal from the PCRA Order of March 22, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0406281-2005

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

DISSENTING MEMORANDUM BY OLSON, J.:      **FILED FEBRUARY 13, 2017**

I believe that Appellant's March 19, 2014 petition filed pursuant to the Post-Conviction Relief Act (PCRA)[1] is untimely and no exception applies; therefore, the PCRA court lacks jurisdiction to consider the claims raised in the petition.  Accordingly, I must respectfully dissent.

As the learned Majority notes, the PCRA contains a jurisdictional time-bar, which is subject to limited statutory exceptions.  This time-bar demands that "any PCRA petition, including a second or subsequent petition, [] be filed within one year of the date that the petitioner's judgment of sentence becomes final, unless [the] petitioner pleads [and] proves that one of the [three] exceptions to the timeliness requirement . . . is applicable."

_____

[1] 42 Pa. C.S.A. §§ 9541-9546.

*Commonwealth v. McKeever*, 947 A.2d 782, 785 (Pa. Super. 2008); 42 Pa.C.S.A. § 9545(b). Further, since the time-bar implicates the subject matter jurisdiction of our courts, we are required to determine first the timeliness of a petition before we consider the underlying claims. *Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999). Our Supreme Court has explained:

> the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court is precluded from considering untimely PCRA petitions. *See*, *e.g.*, *Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000) (stating that "given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner"); *Commonwealth v. Fahy*, 737 A.2d 214, 220 (Pa. 1999) (holding that where a petitioner fails to satisfy the PCRA time requirements, this Court has no jurisdiction to entertain the petition). [The Pennsylvania Supreme Court has] also held that even where the PCRA court does not address the applicability of the PCRA timing mandate, th[e court would] consider the issue *sua sponte*, as it is a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief.

*Commonwealth v. Whitney*, 817 A.2d 473, 475-476 (Pa. 2003).

In this case, Appellant's judgment of sentence became final on June 30, 2009, therefore, the PCRA petition filed on March 19, 2014 is patently untimely. The learned Majority acknowledges the untimeliness of the petition, however, concludes that Appellant sufficiently pled the newly-

- 2 -

discovered fact exception set forth in Section 9545(b)(1)(ii).[2] Majority Memorandum at 5. In reviewing the PCRA petition, I must respectfully disagree that Appellant sufficiently pled facts that would entitle him to the newly-discovered fact exception.

It is well established that it is the petitioner's burden to allege and prove that one of the PCRA timeliness exceptions applies and whether the petitioner met this burden is a threshold inquiry that must be resolved prior to considering the merits of the petition. *Commonwealth v. Edmiston*, 65 A.3d 339, 346 (Pa. 2013). As the learned Majority succinctly noted,

_____

[2] Appellant's PCRA petition does not allege or reference the newly discovered fact exception. Instead, the petition alleges "equitable tolling". PCRA Petition, 3/19/14, at 19 (unpaginated). Specifically, Appellant asserts that he diligently pursued his claims; however, correctional officers improperly confiscated and destroyed his petitions, notes of testimony and other evidence. Thus, he argues that the "PCRA statute is . . . subject to equitable tolling." *Id.* As our Supreme Court has made clear, "the period for filing a PCRA petition is not subject to the doctrine of equitable tolling; instead the time for filing a PCRA petition can be extended only by operation of one of the statutorily enumerated exceptions to the PCRA time-bar." *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016) (internal citations and quotes omitted). Because of this, I believe that we could dismiss this most recent PCRA petition for failure to assert properly the newly discovered fact exception. However, since the petition does allege that Appellant did not receive the information regarding juror #2 until December 31, 2013 and February 14, 2014, I agree with the Majority's conclusion that Appellant's "allegations *touch upon* the newly discovered fact exception in Section 9545(b)(1)(ii)." Majority Memorandum at 5 (emphasis added).

> [t]he timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. **A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced.** Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

Majority Memorandum at 6, *quoting* **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015) (internal quotations and citations omitted) (emphasis added). In citing to the Appellant's brief, the Majority finds that Appellant "repeatedly wrote letters to his trial counsel Scott J. O'Keefe requesting his entire file including transcripts, exhibits, and medical files of the officers in the case"; Attorney O'Keefe (now Judge O'Keefe) sent a copy of the notes of testimony to Appellant on March 14, 2007 and informed Appellant "that was everything that counsel had"; Appellant "did not receive the jury [*voir dire*] transcripts until December 31, 2013, from a co-defendant who he has not seen or spoken to since the trial in 2006"; and Appellant did not receive a background report regarding the juror at issue until February 14, 2014, therefore Appellant "did not and could not have learned of the juror misconduct" until that date. Majority Memorandum at 6-7 *quoting* Appellant's Brief at 2-3. Although these allegations are contained in Appellant's brief, I do not believe that they support the conclusion reached

- 4 -

by my learned colleagues that Appellant "pled sufficient facts to support the newly-discovered fact[] exception to the timeliness requirement and that [Appellant] acted with due diligence." Majority Memorandum at 8.

Attached to his PCRA petition is a hand-written statement prepared by Appellant in which he alleges that he wrote to Attorney O'Keefe on September 23, 2006 (shortly after the conclusion of the jury trial in which Appellant was found guilty) and requested his files. PCRA Petition, 3/19/14, at 15 (unpaginated). On September 29, 2006, Attorney O'Keefe allegedly sent a letter with one trial transcript and indicated that was all he had. *Id.* Appellant claims he did not believe Attorney O'Keefe's representation that that was all he had, so Appellant alleges he sent a letter to Attorney O'Keefe every 15 days from October 10, 2006 until November 18, 2007 asking for copies of all of his paperwork and each request was ignored. *Id.* Although these allegations are made, the only pertinent letter attached to the petition is a letter dated October 11, 2012 from Emily Cherniack, Esquire (Appellant's second lawyer) to Appellant. [3] This letter reads in relevant part:

_____

[3] Appellant attaches copies of other letters to his brief, including letters from Attorney O'Keefe dated March 14, 2007 and September 30, 2013, and letters from Jason Javie of Michael J. Diamondson, P.C. dated March 18, 2012 and August 20, 2012. These letters were not attached to the March 19, 2014 PCRA petition and, although some of these letters were attached to prior PCRA petitions filed by Appellant, it is not clear that all of the letters were. To the extent that these letters were not made part of the certified
*(Footnote Continued Next Page)*

> Enclosed is a copy of your transcripts in the above-captioned matter which I have retained. I do not have the discovery in your matter. I will check again but I believe Mr. O'Keefe as your trial attorney may have retained a copy. As I was relieved as your court appointed attorney, I have no ability to request your discovery for you.
>
> I can make two suggestions to you. First, **if Mr. O'Keefe no longer has the file, Mr. Ostriak may have a copy of your co-defendant's discovery**. Also, if your family has access to the criminal justice center, some or much of the police paperwork may be in the file as exhibits in the court file.

*Id.* at 14 (unpaginated) (emphasis added). Thus, as early as October 11, 2012, Appellant was advised by his second counsel that she did not have the documents requested and that, if Attorney O'Keefe did not have the documents (a fact which Appellant knew as he alleged that he repeatedly requested documents from Attorney O'Keefe starting in 2006 and only received one transcript), he should contact his co-defendant's lawyer to see if he had copies of the requested documents. Apparently, that is what Appellant ultimately did as he alleges in his PCRA petition that he received a copy of the relevant jury *voir dire* transcript from his co-defendant, Lamont

*(Footnote Continued)* _____

record, we cannot consider them. **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (if a document is not in the certified record, the Superior Court may not consider it), *appeal denied* 916 A.2d 632 (Pa. 2007). **See also Commonwealth v. Kennedy**, 868 A.2d 582, 593 (Pa. Super 2006) (Any document not in the certified record is deemed non-existent, a deficiency which cannot be remedied merely by attaching the missing documents to the brief.). Even if I were to consider these documents, I do not believe they support the conclusion that Appellant acted diligently in ascertaining the newly discovered facts regarding juror #2.

Childs, on December 31, 2013, more than one year after he was advised by Attorney Cherniack to contact his co-defendant's counsel to see if he had the requested materials. I do not believe that waiting over one year to contact either his co-defendant or his co-defendant's counsel to request the relevant transcript supports a finding that Appellant acted with due diligence.[4]

Additionally, Appellant alleges in his petition that, after receiving the pertinent jury *voir dire* transcript on December 31, 2013, he requested the help of a fellow prisoner, Anthony Murphy, on January 31, 2014. PCRA Petition, 3/19/14, at 19 (unpaginated). Appellant asserts "[t]his prisoner . . . agreed to have his friends run a back ground [*sic*] search of several juror[s]. On February 14th 2014 Murphy sent [Appellant] a copy of [j]uror #2['s] . . . docket sheet. [Appellant] promptly filed this PCRA after discovered [*sic*] that [juror #2] lied." **Id.** In support of this allegation, Appellant attaches a hand-written document entitled "Affidavit" dated February 15, 2014 purportedly signed by Anthony Murphy.[5] That document provides in its entirety:

---

[4] Appellant's co-defendant and co-defendant's counsel were known to Appellant as potential sources of relevant information as early as the time of trial in 2006. Clearly, then, they should have been investigative targets for any supplemental information that Attorney O'Keefe was unable to produce.

[5] Although captioned "Affidavit", the document purportedly signed by Anthony Murphy is not an affidavit. An affidavit is "[a] voluntary declaration of facts written down **and sworn to** by a declarant . . . before an officer authorized to administer oaths." **Black's Law Dictionary** (10th ed. 2014) (emphasis added). Nothing on the document purportedly signed by Mr.

*(Footnote Continued Next Page)*

> I Anthony Murphy FW0863 hearby [*sic*] declare that the following facts are true and correct to the best of my knowledge & belief[.]
>
> On February 15 2014 I gave [Appellant] a common pleas docket sheet with the name of William McCall[.]
>
> ***[Appellant] has been asking me to help him to get a background report for over a year*** but I could not get it until Feb 13 2004 [*sic*] [.]

PCRA Petition, 3/19/14 at 10 (unpaginated) (emphasis added). Thus, Appellant's own petition indicates that he knew about juror #2 and had been seeking a background report on the juror in question for over a year. Hence, the record does not support the conclusion that Appellant acted with due diligence in obtaining the newly discovered facts upon which he now relies. As this Court stated in **Brown**, "[a] petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is **strictly** enforced.". **Commonwealth v. Brown,** 111 A.3d at 176 (emphasis supplied).

Most troubling of all is that the allegations set forth in Appellant's March 19, 2014 PCRA petition regarding his inability to obtain the jury *voir dire* transcript do not appear to be truthful. Contained within the certified record is the PCRA petition filed by Appellant on November 19, 2008, just two years after his conviction. Appellant attached to that petition a typed-

*(Footnote Continued)* ————————

Murphy indicates that Mr. Murphy swore to or affirmed the statements made in the document before an officer authorized to administer oaths.

written document that contains a section entitled "Basic and Fundamental Error's [*sic*]. PCRA Petition, 11/19/08 at 35. In that section, Appellant asserts that juror #29, S.C., was stricken for cause based on her testimony that she was a victim of a crime. *Id.* Appellant then cites to notes of testimony (pages 186-187) and quotes the question posed to juror #29 and her answer.[6] *Id.* This attachment goes on to reference other jurors who

_____

[6] I note that the quote contained in Appellant's 11/19/08 PCRA petition is not identical to the language contained in the notes of testimony from the jury *voir dire* proceeding on September 18, 2006. Appellant's PCRA petition states:

> (The Court) Q. Have you or someone close to you been the victim of a crime?
>
> (Juror #29) A. Yes, me, [i]t was a [r]obbery.

PCRA Petition, 11/19/08 at 35. The notes of testimony from the *voir dire* proceeding reads:

> The Court: You or someone close to you has been the victim of a crime?
>
> Juror #29: Yes.
>
> The Court: Who would that have been?
>
> Juror #29: Me.
>
> The Court: Did it involve the same or similar type of offense or offenses that you heard mentioned here:
>
> Juror #29: No.
>
> The Court: Was it robbery, assault?

*(Footnote Continued Next Page)*

were stricken for cause and cites to the relevant transcript pages. ***Id.*** Based on this document, I can only conclude that Appellant had the relevant notes of testimony from the September 18, 2006 jury *voir dire* proceeding as early as November, 2008. Appellant's possession and use of the 2006 jury *voir dire* transcripts in support of his previous November, 2008 petition wholly undercuts the credibility of his present assertion that he did not obtain the jury *voir dire* transcript until December 31, 2013. In addition, Appellant's earlier possession of the jury *voir dire* transcript advances the trigger date for investigating claims concerning the veracity of juror #2's responses to questions posed by the trial judge.[7]

For the foregoing reasons, I do not believe that Appellant's March 19, 2014 PCRA petition is timely. Accordingly, the PCRA court lacks jurisdiction to consider the merits of the petition.

_____
*(Footnote Continued)*

Juror #29: it was robbery.

N.T., 9/18/06, at 186-187. Although not identical, the Appellant's November 19, 2008 PCRA Petition accurately reflects the contents of the questions and answers with respect to juror #29 and correctly references the pages of the notes of testimony.

[7] Indeed, even the content of Mr. Murphy's statement strongly supports the conclusion that Appellant has long harbored, but failed to act upon, suspicions that juror #2 made false statements regarding his criminal history. In his statement, Mr. Murphy declared that Appellant had requested his assistance in securing background information "***for over a year***." ***See*** PCRA Petition, 3/19/14, at "Affidavit" of Anthony Murphy (emphasis added).